Johnny QUINONES–RUIZ, Plaintiff,

v.

UNITED STATES of America, the U.S. Customs Service, and Does 1 Through 10, Inclusive, Defendants.

No. 94–0050–IEG (BTM).

United States District Court, S.D. California.

Sept. 23, 1994.

984

Alan D. Bersin, U.S. Atty. and Donald D. Clausen, Asst. U.S. Atty., San Diego, CA, for the U.S.

John F. Cherry, San Diego, CA, for plaintiff.

## ORDER GRANTING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT AND DENYING UNITED STATES' MOTION FOR SUMMARY JUDGMENT [DOC. # 8]

GONZALEZ, District Judge.

The motion for summary judgment brought by the United States came on regularly for hearing on August 29, 1994, at 10:30 a.m., in Courtroom 11 of the above-entitled court, the Honorable Irma E. Gonzalez presiding. Attorney John F. Cherry appeared on behalf of plaintiff Johnny Quinones–Ruiz. Assistant United States Attorney Donald D. Clausen appeared on behalf of the United States.

### BACKGROUND

■ On April 26, 1993, United States Customs Officers were performing exit border searches in southbound traffic near the Mexican border when they stopped three individuals in a 1983 Ford Thunderbird and questioned them regarding whether they were exporting over $10,000.00 from the United States. Plaintiff Johnny Quinones–Ruiz, a passenger in the vehicle, responded that he was not exporting over $10,000.00. The officers referred the car to secondary inspection and performed a search. During the search, officers found a paper bag containing $40,-420.00 in currency wrapped in a plastic bag. They seized the currency. The officers arrested plaintiff and charged him with a violation of 31 U.S.C. § 5324(b), Failure to File Report, and 18 U.S.C. § 1001, False Statement.[1] In late August, 1993 plaintiff pleaded guilty to one count of 18 U.S.C. § 1001. On November 10, 1993 the court sentenced him to two years probation, including 60 days in a community confinement center and a $50.00 penalty assessment.

On May 4, 1993, pursuant to 19 U.S.C. § 1607,[2] the government mailed notices to plaintiff at the following addresses: 11426 Budlong Avenue # 7, Los Angeles, California, 90249, which appeared on his driver's license; the Metropolitan Correctional Center ("MCC"), where plaintiff was detained; 14635 S. Western, Gardena, California, 90249; and 1440 El Segundo Boulevard, Hawthorne, California, 90250. The last two were addresses found in plaintiff's possession at the time of his arrest. The government also published a notice of seizure and intent to forfeit in the San Diego Daily Transcript for three weeks on June 8, 15 and 22, 1993.

Plaintiff contends he never received notice of the intended forfeiture, and has now sued to recover the $40,420.00. He filed a late petition for return of proceeds and claim of ownership with the U.S. Customs service in November, 1993. This claim was denied. On January 11, 1994 plaintiff filed this complaint for return of the money seized.

### DISCUSSION

The United States moves for summary judgment. In his opposition, plaintiff requests that judgment be rendered in his

1. Pursuant to Rule 201(c) of the Federal Rules of Evidence, the Court takes judicial notice of the record in *United States v. Johnny Quinones–Ruiz,* Cr. No. 93–569–K.

2. 19 U.S.C. § 1607 governs notice of seizures valued at $500,000 or less and provides in pertinent part:
   the appropriate customs officer shall cause a notice of the seizure of such articles and the intention to forfeit and sell or otherwise dispose of the same according to law to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct. Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article.

favor if this Court finds that the issues can be decided as a matter of law. Accordingly, the Court will address the papers as cross-motions for summary judgment.

## I. Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). The burden then shifts to the nonmoving party to show that summary judgment is not appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To make such a showing, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. *Id.* However, in considering this motion, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his or her favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

## II. Notice

█ Plaintiff contends the administrative forfeiture is void because he did not receive adequate notice. Due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Notice need not actually be received to meet this requirement, so long as it was reasonably calculated to notify the interested parties, considering the peculiarities of the particular case.

Here, the United States contends that it met the notice requirement of 19 U.S.C. § 1607 by sending four notices to plaintiff by mail and publishing notice for three weeks in the San Diego Daily Transcript. The published notices explained the procedures for filing a claim with Customs in order to stop the forfeiture, and stated the deadline for filing a claim.

Plaintiff, however, argues that the government did not meet due process requirements because it never sought to ascertain his current address, it did not personally serve him at MCC and he never received notice there, and he could not reasonably be expected to read the Daily Transcript, particularly because he is only marginally conversant in English. Plaintiff also contends notice was improper because the government did not send a notice to the attorney representing him in his criminal case. The court appointed counsel for plaintiff on May 4, 1993, the same date that notices were mailed.

The Court finds that the notice provided in this case was adequate, in that it was reasonably calculated, considering the circumstances, to apprise plaintiff of the forfeiture action. Although plaintiff claims that he never received notice, this in and of itself does not render the notice inadequate. *See Cohen v. United States,* 297 F.2d 760 (9th Cir.1962).

The Customs Service reasonably expected that at least one of the four mailed notices would be effective. It is apparently the standard practice for the Customs Service to send notices to MCC with the appropriate booking number of the individual to whom the notice is sent. If the individual is no longer incarcerated at MCC, the notice is routinely returned as undeliverable. *See* Declaration of Ana Hinojosa. In this case, Customs never received a returned notice, so the agency appropriately assumed that notice had been effective.

The notice which the Customs Service sent to the address listed on plaintiff's driver's license was similarly not returned, although the other two notices were returned as undeliverable. The Customs Service therefore reasonably believed that plaintiff had received notice of the intended forfeiture. The Court also finds that the Customs Service was not required to notify plaintiff's counsel in his criminal case, because plaintiff did not have counsel until the day that the notices were sent, and because the Customs Service reasonably believed that notice to plaintiff

was effective. *See Sarit v. United States Drug Enforcement Administration,* 987 F.2d 10 (1st Cir.1993).

### III. Validity of the Search

The government next contends that the search of the vehicle was reasonable, and the forfeiture thus cannot be void on these grounds. Although plaintiff's complaint alleges an unlawful search and seizure, plaintiff's counsel at the hearing on this motion indicated that he does not intend to pursue this claim.

■ In any event, the law is clear that under the border search exception, a search may be initiated without a warrant, probable cause, or even articulable suspicion. *United States v. Cardona,* 769 F.2d 625, 628 (9th Cir.1985). The border search exception applies equally to persons entering or exiting the country. *Id.* at 628. Accordingly, the Court finds that the search was valid.

### IV. Double Jeopardy

Plaintiff also argues that forfeiture of the currency seized in this case violates the Eighth Amendment prohibition against excessive penalties and the Fifth Amendment's Double Jeopardy Clause. Because a finding of double jeopardy would bar any further proceedings in this action, the Court will first address the double jeopardy issue.

■ The Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *In re Kurth Ranch,* 986 F.2d 1308, 1310 (9th Cir.1993); *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). This case implicates the third of these protections.

■ The multiple-punishment prohibition applies only when the State attempts to criminally punish a defendant twice for the same offense. *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984). The clause does not bar the state from imposing both a civil and a criminal penalty upon a defendant for the same offense. *Helvering v. Mitchell,*

303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938). However, where the government seeks to impose in addition to a criminal sanction a civil sanction in a separate proceeding that can only be understood as punitive, the Double Jeopardy Clause is violated. *See United States v. Halper,* 490 U.S. 435, 448, 109 S.Ct. 1892, 1901–02, 104 L.Ed.2d 487 (1989); *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210, 94 Daily Journal D.A.R. 12590 (9th Cir.1994).

The Court therefore must determine in this case whether the civil forfeiture action at issue here constituted a separate "proceeding," and whether civil forfeiture under 31 U.S.C. § 5317(c) constitutes "punishment." *See United States v. $405,089.23 U.S. Currency.*

### A. Separate Proceedings

■ There appears to be no dispute in this case that the forfeiture of plaintiff's currency constituted a separate proceeding from his criminal prosecution. Plaintiff pleaded guilty to one count of 18 U.S.C. § 1001—False Statement, and was sentenced under that provision. The civil forfeiture action was brought separately from the criminal action. Even if the government were to characterize this action as part of one, coordinated prosecution, this argument would fail. "[A] civil forfeiture action which is brought and tried separately from a criminal prosecution and is based upon the same offense constitutes a separate 'proceeding.'" *United States v. $405,089.23 U.S. Currency,* 33 F.3d at 1218, 94 D.A.R. at 12592–12593. A forfeiture case and a criminal prosecution would constitute the same proceeding "only if they were brought in the same indictment and tried at the same time." *United States v. $405,089.23 U.S. Currency,* 94 D.A.R. at 12592.

Although in this case plaintiff did not timely contest the forfeiture because he claims he never received notice of the impending proceeding, the forfeiture still constituted a "proceeding" separate from the criminal prosecution. The government's characterization of the forfeiture in this case as "administrative" does not preclude this conclusion. The Court therefore finds that the forfeiture in this case constituted a separate proceeding from the criminal conviction. The Court

must now determine whether the forfeiture which occurred constituted "punishment."

### B. Forfeiture as Punishment

The government forfeited the currency at issue here under 31 U.S.C. § 5317(c), which provides in pertinent part:

(c) If a report required under Section 5316 with respect to any monetary instrument is not filed (or if filed, contains a material omission or misstatement of fact), the instrument and any interest in property, including a deposit in a financial institution, traceable to such instrument may be seized and forfeited to the United States Government ...

The United States contends that under 31 U.S.C. § 5317(c), seizure of the *res* can never implicate the Double Jeopardy Clause because courts have never questioned the forfeiture of instrumentalities of a crime; such forfeitures are presumed to be remedial.[3] However, the United States in reaching this conclusion ignored the significant changes in the law of forfeiture as pronounced both by the Supreme Court and by the Ninth Circuit.

Just recently in *United States v. $405,089.23 U.S. Currency,* the Ninth Circuit noted that although only a decade ago the law was clear that civil forfeitures did not constitute punishment for double jeopardy purposes, the law in this area has significantly changed.

In determining whether a forfeiture was punitive for double jeopardy or Eighth Amendment purposes, the Supreme Court previously presumed that where Congress had indicated a preference that the proceeding be considered "civil" rather than "criminal," the Court would defer to that preference absent extraordinary circumstances. *United States v. $405,089.23 U.S. Currency,* 33 F.3d at 1218, citing *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980). However, in *United States v. Halper,* the Court held that the labels attached by Congress on a particular sanction are not of "paramount importance" in determining whether a sanction

constitutes punishment for double jeopardy purposes. *Id.* at 12593, quoting *United States v. Halper,* 490 U.S. at 447–48, 109 S.Ct. at 1901–02. Rather, the Court in *Halper* stated that "[a] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Halper,* 490 U.S. at 448, 109 S.Ct. at 1902. Most recently in *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), a challenge to a civil forfeiture under the Eighth Amendment's Excessive Penalties Clause, the Court reaffirmed that a sanction denominated as civil which is designed even in part to deter or punish will constitute punishment, regardless of whether it also has a remedial purpose. Thus the Court in *Austin* determined that the Excessive Fines Clause of the Eighth Amendment applies to civil forfeitures. In *United States v. $405,089.23 U.S. Currency,* the Ninth Circuit applied that reasoning to hold that where a civil forfeiture constitutes "punishment" under the *Halper* analysis, it also constitutes "punishment" for double jeopardy purposes.

The United States argues that *Austin* does not apply to this case because *Austin* involved forfeiture under § 881(a)(4) and (a)(7), whereas this case involves forfeiture under a different statute. The Court presumes that the government would make the same argument with respect to the Ninth Circuit's recent decision in *$405,089.23 U.S. Currency.*[4] However, the fact that those cases involved an analysis of a different statute does not end this Court's inquiry. Rather, under *Austin,* the Court must examine the statute under which the government has brought the forfeiture action to determine whether forfeiture under the statute is intended to be punitive or wholly remedial. *See $405,089.23,* 94 D.A.R. at 12594.

Whether forfeiture under this statute is subject to the limitations of the Double Jeopardy Clause appears to be an issue of first

---

3. It is noteworthy that at the hearing on this matter, counsel for the United States conceded that the forfeiture in this case served no compensatory purpose.

4. This case was decided after the hearing held on this motion.

impression in this Circuit. The Second Circuit, however, recently addressed this question in *United States v. $145,139 U.S. Currency and $150 in Travellers Checks*, 18 F.3d 73 (2d Cir.1994). The government relies almost exclusively on that decision. In that case, which similarly involved the seizure of undeclared money under 31 U.S.C. § 5317(c), the Second Circuit found that neither the Double Jeopardy Clause nor the Excessive Fines Clause were implicated in forfeiture under this section, because following the traditional concept of forfeiture, the action is not against the owner of the property, but against the property itself. The undeclared money is itself the culprit. *Id.* at 75. The court thus reasoned that seizure of the money, which is the *res*, can never be excessive because it is the instrumentality by which the crime is committed. The court added that because the government spends substantial sums regulating the flow of money and other goods across the nation's borders, forfeiture in such cases "is remedial rather than punitive," and thus does not implicate the Double Jeopardy Clause.

However, the Second Circuit apparently did not consider the implications of *Austin*. This circuit, following *Austin*, has rejected an important part of the Second Circuit's analysis. Specifically, the court in *$145,139* relied on this circuit's decision in *United States v. McCaslin*, 959 F.2d 786 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 382, 121 L.Ed.2d 292 (1992), which had rejected a double jeopardy challenge to a forfeiture under § 881(a)(7). In *McCaslin*, the court found that *Halper* did not apply. Specifically, the court in *McCaslin* stated:

> *Halper* has no application to the very ancient practice by which instrumentalities of a crime may be declared forfeit to the government. The forfeitures of such instrumentalities is " 'independent of, and wholly unaffected by any criminal proceeding *in personam.*' "

*McCaslin*, 959 F.2d at 788. The Ninth Circuit, however, has since significantly departed from this earlier analysis to state that this language "underestimated the force" of *United States v. Halper. $405,089.23*, 94 D.A.R. at 12593. In *U.S. v. $405,089.23*, the Court

noted that the Supreme Court in *Austin* "directly rejected our *McCaslin* analysis." *Id.* Accordingly, this Court declines to follow the Second Circuit's reasoning in *U.S. v. $145,139*, which directly conflicts at least in part with this circuit's most recent pronouncement on the double jeopardy issue. Moreover, the court in *$145,139* failed to undertake the analysis directed by *Austin* to determine if the forfeiture statute at issue is wholly remedial or at least in part designed to be punitive.

### 1. Application of the *Austin* Analysis

In *United States v. Austin*, the Court analyzed the history of civil forfeitures and concluded that "forfeiture generally and statutory in rem forfeiture in particular historically have been understood, at least in part, as punishment." *Austin*, —— U.S. at ——, 113 S.Ct. at 2810. Although acknowledging the traditional fiction in forfeiture law that " 'the thing is primarily considered the offender,' " *Id.* —— U.S. at ——, 113 S.Ct. at 2808, quoting *Goldsmith–Grant Co. v. United States*, 254 U.S. 505, 511, 41 S.Ct. 189, 191, 65 L.Ed. 376 (1921), the Court explained this fiction as resting on "the notion that the owner who allows his property to become involved in an offense has been negligent." *Austin*, —— U.S. at ——, 113 Ct. at 2809. Thus, "even though this Court has rejected the 'innocence' of the owner as a common-law defense to forfeiture, it consistently has recognized that forfeiture serves, at least in part, to punish the owner." *Id.* —— U.S. at ——, 113 S.Ct. at 2810. Thus in *Austin*, the Supreme Court began its analysis of § 881(a)(4) and (a)(7) with a strong presumption that forfeiture is designed in part as punishment. In determining whether forfeiture under § 5317(c) constitutes punishment, this Court begins with that same presumption that forfeiture statutes are generally intended to be in part punitive.

The Court in *Austin* next considered that because § 881(a)(7) and (a)(4) provide for an "innocent owner" defense, it is likely that the law serves at least in part to deter and punish guilty conduct. Although 31 U.S.C. § 5317(c) does not exempt the innocent owner from the loss of his property, the presumption that the innocent owner was negli-

gent in permitting his property to be used wrongfully is applicable here. As Blackstone has explained in tracing the history of forfeitures of the property of "innocent" owners, "such misfortunes are in part owing to the negligence of the owner, and therefore he is properly punished by such forfeiture." 1 W. Blackstone, Commentaries *301, quoted in *Austin,* ─── U.S. at ───, 113 S.Ct. at 2809. Regarding the English Law which provided for statutory forfeitures of offending objects used in violation of the customs and revenue laws, Blackstone considered such forfeiture statutes "penal." 3 W. Blackstone *261, cited in *Austin,* ─── U.S. at ───, 113 S.Ct. at 2807.

The purpose of the currency declaration requirements supports the understanding that forfeiture in such cases is in part punitive. The purpose of the reporting requirements is "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 U.S.C. § 5311. Courts have explained that the requirements act as an inducement to pay taxes, inhibit money-laundering, and provide leads to criminal sources of cash. *See U.S. v. U.S. Currency in Amount of $145,139.00,* 803 F.Supp. 592, 597 (E.D.N.Y.1992). Thus, even if the transporter of the currency is not the owner, it is the owner who may benefit from not declaring his currency if he intends to avoid taxes, launder money or avoid alerting authorities to his illegal activities. Clearly the forfeiture is intended in part to punish and deter such an owner.

Finally, the Court in *Austin* considered that where Congress has tied forfeiture directly to the commission of specified offenses, it is reasonable to presume that the forfeiture is at least partially intended as an additional deterrent to or punishment for those violations of law. Here, the forfeiture is tied to the offense of failing to declare currency. Although at times the transporter will not be the owner of the currency, the owner is presumed to be at least in part

responsible for the failure to declare, since it is the owner who may seek to benefit from the violation. Thus the forfeiture acts as a strong deterrent both to transporters and to owners.[5] This deterrent quality suggests that the statute is in part punitive.

## 2. Textual Analysis

Examining the statute itself, it is not clear whether the forfeiture is intended to be civil or criminal in nature. In a persuasive dissent in *United States v. $145,139,* Judge Kearse thoroughly analyzed the statute and found no indication that Congress intended the forfeiture to be either civil or criminal. Subchapter II of Chapter 53 of Title 31, 31 U.S.C. §§ 5311–5328 (1988) provides for criminal penalties, civil penalties, and forfeiture. Section 5321 is described as a "civil penalty" which expressly may be imposed in addition to a criminal penalty. 31 U.S.C. § 5321(d). Section 5317 permits forfeiture of the undeclared property, but nowhere does this section denominate the forfeiture as "civil." Rather, unlike § 5321, § 5317 does not use the term "civil" at all. In addition, there is no indication in the statute that Congress intended for forfeiture under this section to be imposed in addition to criminal penalties.

Moreover, as Judge Kearse noted, § 5317 does not appear to fit any of the commonly accepted purposes of civil remedies, the most common of those being (1) compensation for past losses, which might include the cost of enforcement, (2) coercion to compel the target's compliance with legal directives, and (3) correction or prevention of inappropriate conditions. *$145,139,* 18 F.3d at 79 (Kearse, J. dissenting). The first purpose, compensation, is not appropriate because the forfeiture is not limited to the extent of any loss. Rather, the amount of money to be forfeited will vary widely, and bears no relation to the cost of prosecuting the offense. The Court in *Austin* noted that a similar disparity in the value of the forfeitures under § 881(a)(4) and (a)(7) weighed in favor of finding that forfeiture under § 881 was punitive rather

---

**5.** Of course, if the owner is not the transporter of the currency, there is no double jeopardy problem.

lem. It is only where the transporter owns the

than remedial.[6] *See Austin,* ⸺ U.S. at ⸺, 113 S.Ct. at 2812. Indeed, there is no reason to view forfeiture of undeclared currency as serving any more of a remedial purpose than forfeiture under § 881(a)(4) or (a)(7). Certainly the government similarly benefits from the funds it acquires from forfeitures under that section.[7]

Judge Kearse also noted that the second purpose, to compel compliance, does not apply, because the forfeiture only comes into play after the government has learned of the transport of the funds, at which time there is no need to compel the report.

Finally, the correction or prevention of inappropriate conditions, which has often justified removal from circulation of the instrumentality of a crime, makes no sense in this context. Although the government argues here that the currency in such cases has traditionally been considered the "instrumentality" of the crime and thus forfeitable as contraband, in such a case it defies reason to suggest that the money, which is not illegal to possess or transport, becomes guilty simply by the failure of its owner, or transporter, to report it. As Judge Kearse noted, "[t]he traditional fiction of 'instrumentality' takes on a surreal quality if the crime is a failure to report, and the unreported item itself, whose existence and presence may be entirely innocent and harmless, is characterized as 'culpable' or as a 'harmful object' simply because its existence has not been disclosed." *$145,139,* 18 F.3d at 79 (Kearse, J. dissenting).

The Supreme Court in *Austin,* responding to a similar argument advanced by the government in that case, rejected the notion that removal of the "instrument" of the crime is always "remedial" because it removes illegal items from society. In *Austin,* the government had forfeited the claimant's mobile home and auto body shop, where he had stored and sold cocaine. In rejecting the government's argument, the Court referred to a previous case in which it had overturned the forfeiture of an automobile used to transport illegal liquor, noting that forfeiture of the "instrumentality" there was inappropriate because "[t]here is nothing even remotely criminal in possessing an automobile." *Austin,* ⸺ U.S. at ⸺, 113 S.Ct. at 2811, quoting *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 699, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965). "The same, without question, is true of the properties involved here, and the government's attempt to characterize these properties as 'instruments' of the drug trade must meet the same fate as Pennsylvania's effort to characterize the 1958 Plymouth Sedan as 'contraband.' " *Austin,* ⸺ U.S. at ⸺, 113 S.Ct. at 2811. Similarly, here, there is no evidence that the currency was an instrument of any crime other than the failure to report. Moreover, it is not a dangerous or illegal item. Accordingly, the justification of its forfeiture as removal of the "instrumentality" of a crime and thus an illegal object is unconvincing, and strongly suggests that the forfeiture is intended as a punishment.

In sum, even if § 5317 is designed in part to compensate the government for the cost of

---

currency and is thus twice punished for the offense that double jeopardy is implicated.

**6.** Judge Noonan made a similar observation dissenting in *United States v. Walker,* 940 F.2d 442, 444 (9th Cir.1991, Noonan, J. dissenting).

**7.** The Court is aware that at least one other district court has found that *Austin* did not affect the traditional presumption that forfeitures of items involved in customs violations is wholly remedial. In *United States v. $50,000 in United States Currency,* 1994 WL 75145, 1994 U.S. Dist. LEXIS 2701 (N.D.Ill., March 8, 1994), the court rejected an Eighth Amendment challenge to the forfeiture of currency under § 5317(a). The court found that *Austin* did not challenge the right to seize contraband material and therefore

the contraband currency in that case was properly seized. The court there relied on the statement in *Austin* that "[w]e previously have upheld the forfeiture of goods involved in customs violations as 'a reasonable form of liquidated damages,' " quoting *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 237, 93 S.Ct. 489, 493, 34 L.Ed.2d 438 (1972). This Court, however, does not read this statement to say that the Supreme Court would presume that such forfeitures are wholly remedial today. Rather, the reasoning in *Austin* suggests that forfeitures under § 5317(c) would be considered at least in part punitive. Although in many cases this conclusion will not present an Eighth Amendment problem, it does implicate the Double Jeopardy Clause.

regulating the flow of currency across its borders, the Court finds that the statute is also designed to punish the transporter of funds for failing to file the required report, and to deter others who might be inclined to do the same. These are criminal, not civil purposes, *see United States v. Halper*, 490 U.S. at 448, 109 S.Ct. at 1901–02; *Bell v. Wolfish*, 441 U.S. 520, 539, n. 20, 99 S.Ct. 1861, 1874, n. 20, 60 L.Ed.2d 447 (1979), and accordingly the statute must be viewed in part as a form of punishment.

Accordingly, the Court finds that the forfeiture of plaintiff's currency constituted a second punishment in violation of the plaintiff's right under the Fifth Amendment to be free from double jeopardy.

The United States' motion for summary judgment is **DENIED.** Summary judgment is **GRANTED** in favor of the plaintiff.

**IT IS SO ORDERED.**