85 F.3d 638
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Wesley ARLT, Defendant-Appellant.
 No. 95-50487.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 7, 1996.
Decided May 15, 1996.
 
 Before: HALL, O'SCANNLAIN, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Charles Wesley Arlt appeals the district court's denial of his pretrial motion to dismiss the indictment. In this interlocutory appeal, he argues that allowing the present criminal prosecution to go forward would violate double jeopardy in light of prior seizures of his property. We reject his arguments and affirm the district court.
 
 I.
 
 3
 On June 12, 1991, the Government issued its first superseding indictment charging Arlt with conspiracy to manufacture methamphetamine, 21 U.S.C. § 846, aiding and abetting the manufacture of methamphetamine, 21 U.S.C. § 841(a)(1), conspiracy to launder money, 18 U.S.C. §§ 1956, 371, and money laundering, 18 U.S.C. § 1956(a)(1). Five days later, the Government initiated civil forfeiture proceedings under 21 U.S.C. § 881(a)(6) (for proceeds of illegal narcotics) and 18 U.S.C. § 981(a)(1)(A) (for money involved in a violation of the money laundering laws). After Arlt was convicted of all the criminal charges, the Government moved for and was granted summary judgment in the civil forfeiture proceeding. Arlt appealed both his conviction and the forfeiture.
 
 
 4
 We reversed Arlt's civil forfeiture judgment in United States v. $405,089.23 U.S. Currency, 33 F.3d 1210 (9th Cir.1994), amended on denial of reh'g, 56 F.3d 41 (9th Cir.1995). When the Government appealed this decision to the Supreme Court, we stayed our mandate.[1] Four months later, we reversed Arlt's criminal convictions because they were obtained in violation of Arlt's right to self-representation. United States v. Arlt, 41 F.3d 516 (9th Cir.1994).
 
 
 5
 With Arlt's convictions and the forfeiture reversed, the Government issued its second superseding indictment on May 18, 1995, charging Arlt with all the same crimes and with criminal forfeiture under 21 U.S.C. § 853(a). Arlt, in a pretrial motion, moved to dismiss the indictment on double jeopardy grounds. When the district court denied this motion, Arlt filed the present interlocutory appeal. We have jurisdiction over this appeal. 28 U.S.C. § 1291; United States v. Chick, 61 F.3d 682, 685-86 (9th Cir.1995), cert. denied, 116 S.Ct. 1416 (1996). After reviewing the dismissal de novo, United States v. Wong, 62 F.3d 1212, 1214 (9th Cir.1995), we affirm.
 
 II.
 
 6
 Arlt first argues that re-prosecuting him at this time violates the Double Jeopardy Clause's prohibition against multiple punishments. He reasons that the forfeiture of his property in the civil proceeding imposed one punishment, and that the criminal re-prosecution is a separate proceeding imposing a second punishment for the same offense. Under our law as it reads today, this would offend double jeopardy. Chick, 61 F.3d at 686 (noting that the Double Jeopardy Clause protects "multiple punishments for the same offense").[2]
 
 
 7
 In this case, however, we have reversed the judgment against Arlt in the civil forfeiture proceeding. $405,089.23, 33 F.3d at 1221. This reversal would normally "wipe the slate clean" and erase the former punishment, so that any punishment imposed in re-prosecution would not be "multiple." See Burks v. United States, 437 U.S. 1, 17-18 (1978) (holding that the Government may retry a defendant whose conviction has been reversed on appeal, unless the reversal is for insufficiency of the evidence); North Carolina v. Pearce, 395 U.S. 711, 721 (1969) (observing that upon reversal, "the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean"). Arlt concedes that our reversal of his conviction would erase the former punishment,[3] but observes that we have stayed the mandate which would have given effect to our reversal; as a result, Arlt contends, the slate has not yet been wiped clean and his punishment continues until our mandate issues.[4]
 
 
 8
 In examining this claim, we must remember that the Double Jeopardy Clause is concerned more with substance than form. United States v. DiFrancesco, 449 U.S. 117, 142 (1980) ("The exultation of form over substance is to be avoided. The Court said that in the double jeopardy context it is the substance of the action that is controlling ..."). To ascertain the substance of Arlt's punishment, we must look at the status of his forfeited assets. While the district court did enter a judgment in favor of the Government, Arlt almost immediately divested the district court of jurisdiction when he filed his notice of appeal in $405,089.23; in so doing, he prevented the Government from doing anything which would interfere with our proceedings--including executing its judgment. United States v. Bracy, 67 F.3d 1421, 1428 (9th Cir.1995) (citing Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance--it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). Throughout this litigation, then, the Government has essentially held Arlt's property in escrow--an escrow that will end when our mandate finally issues.[5]
 
 
 9
 Temporary seizure of property by the Government is not punishment. Wong, 62 F.3d at 1215 (holding that temporary seizure of property does not state a double jeopardy claim); United States v. Stanwood, 872 F.Supp. 791, 798 (D.Or.1994) ("The act of seizure neither extinguishes ownership ... nor does it vest title in the United States.... Common sense compels the conclusion that punishment occurs when meted out by the court, not before."); see also United States v. Washington, 69 F.3d 401, 403 (9th Cir.1995) (noting that attachment of jeopardy, the point at which the policies behind the Double Jeopardy Clause are implicated, does not occur merely upon Government seizure of property). In substance, then, Arlt has suffered no punishment in the civil forfeiture proceeding.[6] His claim that his re-prosecution subjects him to multiple punishments therefore fails.[7]
 
 III.
 
 10
 Arlt argues that subjecting him to criminal re-prosecution at this time also subjects him to multiple prosecutions. Based on Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963), and United States v. Ward, 448 U.S. 242 (1980), Arlt claims that any proceeding which imposes a punishment--including a civil forfeiture proceeding--is a criminal prosecution. Thus, he concludes, the Double Jeopardy Clause's prohibition against multiple prosecution bars his criminal re-prosecution because it follows his civil forfeiture "prosecution." See Pearce, 395 U.S. at 717 (noting that Double Jeopardy Clause prevents a second prosecution for the same offense after conviction).
 
 
 11
 As an initial matter, we are not convinced that the premises underlying Arlt's argument are sound. The prohibition against successive criminal prosecution bars re-prosecution after a "conviction." See United States v. Halper, 490 U.S. 435, 440 (1989) ("[T]he Double Jeopardy Clause protects against ... a second prosecution for the same offense after conviction.") (emphasis added); Pearce, 395 U.S. at 171 (defining this prong for the first time and citing Ex parte Nielson, 131 U.S. 176 (1889), which dealt with successive prosecutions for bigamy and adultery). Because only criminal prosecutions result in "convictions," we would have to redefine civil forfeiture proceedings as criminal prosecutions for this protection to apply. The cases with which Arlt asks us to do so support only the proposition that certain constitutional rights attach when "punishment" is imposed in a civil proceeding; these cases do not convert the civil proceeding itself into a criminal prosecution.[8] See Kennedy, 372 U.S. at 186 (holding that the Fifth and Sixth Amendment protections accorded a criminal defendant apply in a civil deportation proceeding where the penalty of deprivation of citizenship is imposed as a punishment for draft dodging); cf. Ward, 448 U.S. at 253 (holding that the privilege against self-incrimination did not apply to a Federal Water Pollution Control Act proceeding because the penalty was not "punishment").
 
 
 12
 For the sake of argument, however, we will assume that a civil forfeiture proceeding is a criminal prosecution which could invoke the multiple prosecution bar. This bar is not invoked when, as in this case, the initial "conviction" is reversed on appeal. Pearce, 395 U.S. at 721; Burks, 437 U.S. at 17-18. Arlt argues that his initial "conviction" still stands because our mandate reversing it has not issued; prosecuting him before it issues, he claims, subjects him to multiple prosecutions.[9]
 
 
 13
 As we noted above, the Double Jeopardy Clause focuses on "the substance of the action." DiFrancesco, 449 U.S. at 142. We stayed our mandate so that the Supreme Court could affirm or reject the double jeopardy analysis we set forth in $405,089.23. This stay, however, has absolutely no effect on whether Arlt's civil forfeiture "conviction" is erased. If the Supreme Court affirms our holding, then Arlt's civil forfeiture "conviction" is reversed. If the Supreme Court rejects our holding and concludes that civil forfeiture is not "punishment," then the civil forfeiture judgment is no longer a "conviction" because no punishment is involved.[10] Either way, the prior civil forfeiture "conviction" is wiped clean and the stay of our mandate does nothing more than postpone Arlt's re-prosecution. Because the Double Jeopardy Clause exists only to protect against the "expense, delay, strain, and embarrassment which attend a trial," Serfass v. United States, 420 U.S. 377, 391 (1975), and because Arlt will be subject to a trial in either event, we do not believe that the Double Jeopardy Clause is violated if the Government re-prosecutes Arlt before our mandate issues.
 
 IV.
 
 14
 Arlt finally argues that the Government's confiscation of 16 barrels of hydriodic acid[11] that were not forfeited in $405,089.23 constituted a separate "punishment" rendering his re-prosecution multiple punishment. See Chick, 61 F.3d at 686. As a "dangerous, toxic, or hazardous raw material[ ] ... subject to forfeiture under [§ 881(a)(2) ]," the hydriodic acid was "deemed contraband [to be] seized and summarily forfeited to the United States." 21 U.S.C. § 881(f)(1). While Arlt acknowledges that a person cannot have a property interest subject to punishment in objects that are always illegal to possess, see Cooper v. City of Greenwood, Miss., 904 F.2d 302, 304-05 (5th Cir.1990) ("[O]ne cannot have a property right in that which is not subject to legal possession."), Arlt notes that the hydroidic acid is not always illegal to possess. He observes that § 881(f)(1) deems the acid contraband only if it is subject to forfeiture under § 881(a)(2), which forfeits only those raw materials "used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance in violation of this subchapter." 21 U.S.C. § 881(a)(2). Arlt concludes that the forfeiture of his 16 barrels is consequently tied to the commission of a crime, and is therefore punishment.
 
 
 15
 To begin with, we believe that the Supreme Court--even under its expanded view of what constitutes "punishment"--may have preserved the government's right to confiscate contraband. In Austin v. United States, 113 S.Ct. 2801 (1993), the Court held that the Excessive Fines Clause applied to a forfeiture of property which, because it was punitive rather than remedial, amounted to "punishment."[12] At the same time, the Austin Court "recognized that the forfeiture of contraband itself may be characterized as remedial because it removes dangerous or illegal items from society," id. at 2801; it then cited United States v. One Assortment of 89 Firearms, 465 U.S. 354 (1984) (upholding forfeiture of firearms used in gun-related crimes even though defendant had been acquitted of all charges); and One Lot Emerald Cut Stones and One Ring v. United States, 409 U.S. 232 (1972) (upholding forfeiture of smuggled goods after defendant was acquitted of smuggling charges). Subsequent courts have read the Austin Court's favorable citation of these cases as proof of their continuing validity. See, e.g., Clementi, 70 F.3d at 999; United States v. Brown, 917 F.Supp. 780, 784 (M.D.Ala.1996). If these cases remain valid, then the Government's confiscation of the 16 barrels of contraband ends our inquiry.
 
 
 16
 We will assume, however, that characterizing the barrels as contraband does not prevent their forfeiture from being "punishment." We must therefore examine whether forfeiture of these raw materials under § 881(f)(1) constitutes punishment for the purposes of double jeopardy. In $405,089.23, we held that a civil forfeiture amounted to "punishment" unless it served solely a remedial purpose. 33 F.3d at 1219. We noted that we initially presume that a forfeiture statute does not serve solely a remedial purpose, but that we would also examine: (1) whether the statute included an "innocent owner" defense which tied forfeiture to culpability (so as to be punitive); and (2) whether the statute tied forfeiture "directly to the commission of specified offenses" (as further punishment). Id. at 1221.
 
 
 17
 Applying these factors to this case, we conclude that § 881(f)(1) serves a solely remedial purpose. First, we observe that § 881(f)(1) has no innocent owner defense. Second, we note that forfeiture under § 881(f)(1) is not tied "directly to the commission of specific offenses." While forfeiture under § 881(f)(1) is tied to eligibility for forfeiture under § 881(a)(2), forfeiture under § 881(a)(2) is not predicated on the commission of any offenses--raw materials may be forfeited if they are "used or intended for use" in manufacturing controlled substances. 21 U.S.C. § 881(a)(2).[13] Cf. United States v. $69,292.00 U.S. Currency, 62 F.3d 1161 (9th Cir.1995) (finding forfeiture of smuggled currency under 31 U.S.C. § 5317 to be "punishment" because forfeiture was predicated on commission of smuggling under § 5316); Quinones-Ruiz v. United States, 864 F.Supp. 983, 990 (S.D.Cal.1994) (same); United States v. Heitzman, 886 F.Supp. 737 (E.D.Wa.1994) (finding forfeiture under 18 U.S.C. § 924(d)(1) of firearms used in violation of gun-related crimes to be "punishment"). Third, the reason Congress added the § 881(a)(2) forfeiture clause to § 881(f)(1) is remedial. See H.Rep. No. 681(I), 101st Cong.2d Sess. 101 (1990), reprinted in 1990 U.S.C.C.A.N. 6472, 6506 ("The amendment is needed because law enforcement agents investigating illegal laboratories are placed in a position of danger in seizing and transporting hazardous substances."). Taken together, we believe that § 881(f)(1) serves solely a remedial purpose and does not constitute "punishment." Subjecting Arlt to re-prosecution will not therefore violate double jeopardy.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Supreme Court granted certiorari on the case, see $405,089.23, cert. granted sub nom. United States v. Ursery, 116 S.Ct. 762 (U.S. Jan. 12, 1996) (Nos. 95-345, 95-346). The Court has not yet rendered its decision
 
 
 [2]
 We observe that this proscription applies only to punishments imposed in separate proceedings. The Government is free to join the criminal prosecution and criminal forfeiture in one proceeding. See $405,089.23, 33 F.3d at 1216 (noting that the government could have brought criminal forfeiture proceedings without offending double jeopardy); United States v. Halper, 490 U.S. 435, 450 ("Nor does the decision prevent the Government from seeking both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding."). Indeed, that is what the Government has done in its second superseding indictment
 
 
 [3]
 Arlt does not completely concede this point, however: He argues that we reversed the civil forfeiture judgment in $405,089.23 partly because of insufficiency of the evidence. While it is true that a defendant whose conviction is reversed for insufficient evidence may not be retried, see Burks, 437 U.S. at 17-18, Arlt misreads our holding. We did observe that it was unlikely the Government, at the time it instituted the forfeiture proceedings, had probable cause to believe the assets forfeited where connected with the drug trade. $405,089.23, 33 F.3d at 1215 n. 2. We were careful to rest our reversal, however, solely on double jeopardy grounds. Id. at 1215 ("[W]e begin with the Double Jeopardy Clause [and] because we hold that the clause is applicable and bars further proceedings, we end with it as well."); id. at 1215 n. 2 ("Although the claimants' relief would be incomplete if we were to rest our decision on probable cause, and thus we do not reach that ground ...") (emphasis added). What we said about probable cause was dicta and without legal effect. Even if our statements were not dicta, we do not believe lack of probable cause to institute a proceeding, which examines only that evidence available when the proceeding is instituted, can be equated with insufficiency of the evidence, which examines all the evidence available through a trial's conclusion
 Arlt further argues that our reversal cannot erase the punishment he has suffered from the deterioration of one of the assets the Government seized in $405,089.23, a shrimp boat known as the Stormy Seas Four. Because Arlt may seek compensation from the Government for the deterioration, see United States v. Martinson, 809 F.2d 1364, 1367 (9th Cir.1987) (remanding for determination of damages to a defendant whose assets were accidentally destroyed while in Government custody), he has not suffered punishment for this loss.
 
 
 [4]
 When the mandate issues, Arlt's property would theoretically be returned to him. In reality, however, the Government has secured a temporary restraining order on the property in anticipation of the criminal forfeiture prosecution. Thus, our decision will have little or no practical impact
 
 
 [5]
 If the Supreme Court reverses our decision in $405,089.23, then the Court will have held that a civil forfeiture is not "punishment" at all. In that case, Arlt could not suffer multiple punishments regardless of when our mandate issues
 
 
 [6]
 Arlt's claim that the Government's possession of his property prevents him from retaining the counsel of his choice during the criminal re-prosecution has been squarely rejected by the Supreme Court. See United States v. Monsanto, 491 U.S. 600, 616 (1989) (rejecting argument that pretrial seizure of assets interferes with a criminal defendant's Sixth Amendment right to retain counsel); Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 632-33 (1989) (reject argument that general seizure of assets interferes with a criminal defendant's Sixth Amendment right to retain counsel)
 
 
 [7]
 We are not persuaded by the Government's analogy to DiFrancesco, 449 U.S. 117. DiFrancesco dealt with the Government's right to appeal a criminal defendant's sentence when authorized to do so by statute; the DiFrancesco Court itself admitted that "[t]he guarantee against multiple punishment ... is not involved in this case." Id. at 137. We therefore believe that transplanting DiFrancesco into this context is error
 
 
 [8]
 Indeed, the only cases we have found addressing the effect of civil forfeiture proceedings on double jeopardy rely on the "multiple punishment" bar. See, e.g., Halper, 490 U.S. at 447; Department of Revenue of Montana v. Kurth Ranch, 114 S.Ct. 1937, 1941 (1994) ("This case presents the question whether the tax on possession of illegal drugs ... violate[s] the constitutional prohibition against successive punishments for the same offense."); United States v. Ursery, 59 F.3d 568, 571 (6th Cir.1995), cert. granted, 116 S.Ct. 762 (U.S. Jan. 12, 1996) (Nos. 95-345, 95-346); United States v. Clementi, 70 F.3d 997, 999 (8th Cir.1995). To us, this indicates that the multiple prosecution bar is at worst inapplicable and is at best disfavored in this context
 
 
 [9]
 The Government argues that jeopardy never attached to the civil forfeiture "prosecution" because the mandate never issued; as a result, it claims that re-prosecution is not barred. See Wong, 62 F.3d at 1214 ("An accused must suffer jeopardy before he can suffer double jeopardy.") (citation omitted). We have held that jeopardy attaches in a civil forfeiture proceeding no earlier than when a defendant files an answer. United States v. Barton, 46 F.3d 51, 52 (9th Cir.1995); cf. Washington, 69 F.3d at 403 ("Jeopardy does not attach ... whenever the Government seizes property."). We have not yet definitively decided, however, how much later after the filing of the answer that jeopardy attaches. United States v. Kearns, 61 F.3d 1422, 1428 (9th Cir.1995) ("[T]his court has not determined exactly when jeopardy attaches in a civil forfeiture proceeding."). On numerous occasions, we have hinted that jeopardy does not attach until the district court's judgment is entered. See, e.g., United States v. Sanchez-Cobarruvias, 65 F.3d 781, 783 (9th Cir.1995), cert. denied, 116 S.Ct. 797 (1996) (holding that jeopardy had not attached in prior forfeiture proceeding because "[n]o final decision ha[d] yet been rendered in [the] forfeiture proceedings."); Chick, 61 F.3d at 686 ("Where a claimant ... has been subjected to a civil forfeiture that amounts to punishment and judgment has already been entered, the Fifth Amendment's Double Jeopardy Clause precludes the Government from [instituting a criminal prosecution].") (emphasis added); see also Stanwood, 872 F.Supp. at 798 ("[J]eopardy in the civil forfeiture actions attached ... when the final judgments of forfeiture were entered."). Even if we adopted this "final judgment" rule today, we would not aid the Government because the district court did in fact enter its judgment
 
 
 [10]
 We recognize that the Government will be able to retain Arlt's property if the Court reverses our holding, which would render the Government's criminal forfeiture action seeking the same property moot. Because the criminal forfeiture statute forfeits a defendant's property to the Government automatically upon conviction, see 21 U.S.C. § 853(a), however, we do not believe Arlt will suffer any additional burden defending against his forfeiture during the period until the Supreme Court decides $405,089.23; staying the proceedings to save Arlt from having to defend against the potential criminal forfeiture proceedings would therefore serve no purpose
 
 
 [11]
 Hydriodic acid is a precursor chemical of methamphetamine
 
 
 [12]
 Austin formed the analytical basis for our decision in $405,089.23, 33 F.3d at 1219-21
 
 
 [13]
 Indeed, § 881(a)(2) sweeps more broadly than the related drug offenses. 21 U.S.C. § 841(a) criminalizes the manufacture of controlled substances--it does not criminalize the intent to manufacture such substances. Thus, § 881(a)(2)'s forfeiture of raw materials intended to be used for drug manufacture is not tied to the commission of any offense