OPINION OF THE COURT
Edward M. Rappaport, J.
In this civil forfeiture action (CPLR art 13-A), plaintiff seeks summary judgment against Victor Iadarola and Benito Iadarola in the amount of $15,408,402 with interest, disbursements and costs. Plaintiff also seeks an order compelling the Police Department to turn over cash in the sum of $32,360 and $10,522.21.
FACTS
On July 13, 1991 the plaintiff obtained an ex parte order of attachment (CPLR 1317). On September 18, 1991, Victor Iadarola was served with the summons and complaint. On September 19, 1991, Benito Iadarola was served with the summons and complaint. Both defendants appeared and answered the complaint.
Indictment No. 11144/91 was filed with the court on October 23, 1991. That indictment charged Victor Iadarola with the crime of enterprise corruption, promoting gambling in the first degree (29 counts), possession of gambling records in the first degree (12 counts) and possession of gambling records in the second degree (5 counts). Benito Iadarola was charged in that indictment with the crime of enterprise corruption, promoting gambling in the first degree (36 counts), possession of gambling records in the first degree (16 counts) and possession of gambling records in the second degree (5 counts). The differences in the number of counts between Victor and Benito result from different personal involvement with different gambling locations.
*206 At trial, both Victor and Benito were convicted of enterprise corruption. The underlying acts for Victor’s conviction were the operation of 9 gambling locations, and the underlying acts for Benito’s conviction were the operation of 11 gambling locations (the same 9 as Victor, plus 2 others).
Plaintiff seeks summary judgment against both defendants as to the amount of bets placed in 50 gambling locations.
Defendants oppose the motion claiming failure of proof of the locations for which the defendants were not convicted, and that the civil forfeiture violates defendants’ Fifth Amendment right not to be placed in jeopardy twice.
Courts should avoid constitutional issues if there are other methods of resolving the constitutional question (see, Matter of Attorney-General, 155 NY 441, 446; Curtin v Barton, 139 NY 505, 510-511). Thus, if there exists a statutory bar to this proceeding, the court need not address the double jeopardy claim.
The court will first decide whether Penal Law § 460.30 preempts CPLR article 13-A so as to prohibit the institution of a civil forfeiture action where an enterprise corruption forfeiture is available.
PENAL LAW § 460.30
After a person has been indicted for enterprise corruption, the prosecution has a right to request that the Grand Jury vote a special information seeking forfeiture. The People are required to present to the Grand Jury legally sufficient evidence to establish reasonable cause to believe that certain property or interest is subject to forfeiture under subdivision (1) of Penal Law § 460.30 (Penal Law § 460.30 [2]).
At the time of trial, a petit jury is not informed of this special information. If the petit jury trying the indictment finds a defendant guilty, the People may then present additional evidence relevant to the forfeiture issue. The burden at this proceeding is "beyond a reasonable doubt” (Penal Law § 460.30 [2] [b]).
In contrast to the procedures under Penal Law § 460.30, CPLR article 13-A provides for a separate and distinct proceeding that takes place after conviction (Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 460.30, at 570). The defendant under CPLR article 13-A has a right to a jury trial and the claiming authority must *207 prove the case by a preponderance of the evidence (CPLR 1311 [2], [3] [b]).
The items forfeitable under CPLR article 13-A differ from the objects forfeitable under Penal Law § 460.30. Under Penal Law § 460.30, there are three categories of forfeitable property. These three categories parallel the three different modes by which criminal enterprise may be committed (Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 460.30, at 571).
The first forfeiture section (Penal Law § 460.30 [1] [a]) is aimed at an interest in an enterprise in which an insider contributes "directly and materially to the crime”. The second section (Penal Law § 460.30 [1] [b]) reaches a defendant’s interest that has been acquired in the criminal enterprise. The third section (Penal Law § 460.30 [1] [c]) forfeits any interest that has been derived from an investment of proceeds in a criminal enterprise. All three subdivisions require that the forfeiture be proportionate to defendant’s conduct or gain.
Forfeiture under Penal Law § 460.30 is limited and does not include cash removed from the enterprise, nor substitute proceeds of a crime, nor a money judgment equivalent to the proceeds of a crime (see, Kessler, And A Little Child Shall Lead Them! New York’s Organized Crime Control Act Of 1986, 64 St John’s L Rev 797, 818 [1990]; Girese, Forfeiture: A General Introduction in Understanding Forfeiture and Related Civil Actions in Criminal Law, 23 PLI Litig & Admin Practice Course Handbook Series No. 164, 1992, at 7; Aronchick, New York Forfeiture: A Sleeping Giant, 11 Bridgeport L Rev 119, 128).
In contrast, CPLR article 13-A authorizes forfeiture of proceeds of a crime, substituted proceeds of a crime or a money judgment equivalent to the value of property which constitutes the proceeds of the crime (CPLR 1311 [1]; Morgenthau v Citisource, Inc., 68 NY2d 211, 218).
In this case the claiming authority wishes to obtain a monetary judgment under CPLR article 13-A. This objective is not available under Penal Law § 460.30.
Penal Law § 460.30 (6) specifically authorizes the commencement of a proceeding under CPLR article 13-A where the item forfeited is not forfeitable under Penal Law § 460.30. Thus, the legislation permits the claiming authority to institute this lawsuit because the object of forfeiture is not available under Penal Law § 460.30.
*208 This court need not decide the more difficult question of which statute controls where there is a specific statute dealing with a specific issue, and there exists a general statute covering the same subject matter (see, generally, Matter of Brusco v Braun, 84 NY2d 674).
The court will address the double jeopardy issue because there is no statutory bar to this proceeding.
DOUBLE JEOPARDY
Defendants have made a motion to add as a defense to this action the defense of double jeopardy. The motion is granted.
Civil forfeitures, civil fines, or tax regulations have long been subject to some constitutional limitations (see, Boyd v United States, 116 US 616; United States v United States Coin & Currency, 401 US 715). Until recently, double jeopardy claims have been rejected in these proceedings (US Const 5th Amend; see, Helvering v Mitchell, 303 US 391; United States ex rel. Marcus v Hess, 317 US 537; Rex Trailer Co. v United States, 350 US 148; One Lot Emerald Cut Stones v United States, 409 US 232; see also, United States v One Assortment Of 89 Firearms, 465 US 354).
On May 15, 1989 the Supreme Court of the United States decided United States v Halper (490 US 435). The Court described its holding as "the rare case” (supra, at 449). A computer check of this "rare case” indicates that in the five years since Halper, at least 147 State decisions and at least 198 Federal decisions have cited or discussed the Halper rule. In a recent (June 6, 1994) dissent, Justice Scalia, in an opinion joined in by Justice Thomas, described the Halper decision as follows: "Of course the conviction that Halper was in error is not alone enough to justify departing from it. But there is added to that conviction the knowledge, acquired from brief experience with the new regime, that the erroneous holding produces results too strange for judges to endure, and regularly demands judgments of the most problematic sort. As to the latter: We dodged the bullet in Halper — or perhaps a more precise metaphor would be that we thrust our lower-court colleagues between us and the bullet” (Department of Revenue of Montana v Kurth Ranch, 511 US —, —, 114 S Ct 1937, 1958). This court must now make one of those "problematic” judgments and determine the impact of various Supreme Court decisions on New York’s in personam civil forfeiture statute.
In United States v Halper (490 US 435, supra), defendant, a *209 manager of a medical laboratory, was convicted of filing 65 separate false Medicare claims. Halper had repeatedly billed Medicare $12 for a $3 claim. The net loss to the Government from these false claims was $585. Halper was sentenced to two years in prison and a fine of $5,000. After sentencing, the Government commenced a civil proceeding under the False Claims Act (31 USC §§ 3729-3731). The False Claims Act provided for a civil penalty of $2,000 per count. Halper was thus fined $130,000. At this civil proceeding, the Government claimed that it expended $16,000 to pursue the false claims. Defendant claimed that the civil penalty violated his constitutional right against double jeopardy.
The Supreme Court observed that the double jeopardy rule prohibits not only two trials, but two punishments for the same offense. The Court also said: "[T]he labels 'criminal’ and 'civil’ are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties * * * The notion of punishment, as we commonly understand it, cuts across the division between the civil and criminal law, and for the purpose of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads * * * To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purpose that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.” (Supra, at 447-448.) The Court went on to say that only those sanctions which are "solely” remedial and have no punishment aspect are not within the Double Jeopardy Clause (supra, at 448). Sanctions which partially serve the aims of retribution or deterrence are considered punitive for double jeopardy purposes (supra, at 448-449).
The Court also held that civil penalties that are disproportionate to the Government’s damages and costs are punitive (supra, at 449). The Halper case was remanded for a determination of the disparity between the damages and the costs to the Government, and the amount of the fine (supra, at 452).
On June 28, 1993 the Supreme Court decided Austin v United States (509 US —, 113 S Ct 2801). Austin was convicted in State court of possessing cocaine. The Federal Government *210 commenced a forfeiture action against Austin’s mobile home and auto body shop used in the cocaine distribution. The Federal Government moved for summary judgment. Austin opposed summary judgment on the basis that the United States Constitution 8th Amendment Excessive Fine Clause prohibits the forfeiture (the Double Jeopardy Clause was not involved because the conviction was in a State court and the forfeiture was in Federal court). The District Court and the Circuit Court of Appeals held that the Eighth Amendment did not apply to civil forfeiture proceedings and entered judgment against Austin.
Using the rationale of Halper (supra), the Court held that punishment within the Eighth Amendment could entail both civil forfeiture and criminal sanctions (supra, 509 US, at —, 113 S Ct, at 2805-2806). The Court then analyzed the forfeiture statute to see if it constituted "punishment”. The history of civil forfeitures in the United States indicated that it was "punishment” rather than remedial. Further, since there was an innocent owner exemption and forfeiture was tied to the commission of a crime, the Supreme Court found the civil forfeiture constitutes punishment within the meaning of the Eighth Amendment.
On the same day that Austin was decided, the Supreme Court decided Alexander v United States (509 US —, 113 S Ct 2766). In that case the Court stated that for the purposes of the Eighth Amendment Excessive Fine Clause, the in personam nature of a RICO forfeiture was identical to the in rem forfeiture of Austin (supra, 509 US, at —, 113 S Ct, at 2775). The Court remanded the RICO forfeiture to the Circuit Court for proceedings consistent with Austin. The Court equated in rem forfeitures with in personam forfeitures. Thus, the in personam nature of CPLR article 13-A makes little analytical difference.
On June 6, 1994 the Court decided Department of Revenue of Montana v Kurth Ranch (511 US —, 114 S Ct 1937, supra). The Kurth family had been operating a mixed grain and livestock farm in central Montana. Among the numerous items on the farm were marihuana plants, material and paraphernalia. The Kurths pleaded guilty in a criminal proceeding to various marihuana offenses. After conviction and sentence, Montana imposed a marihuana tax upon the Kurths of $896,940.99. Ultimately, the Kurths filed for bankruptcy and the Bankruptcy Court disallowed the tax on the basis that it violated the Double Jeopardy Clause of the Fifth Amend *211 ment as interpreted by Halper (supra). Although given an opportunity to show the value of the marihuana, the State declined, claiming that double jeopardy does not apply to taxes. The Supreme Court stated: "Criminal fines, civil penalties, civil forfeitures, and taxes all share certain features: They generate government revenues, impose fiscal burdens on individuals, and deter certain behavior. All of these sanctions are subject to constitutional constraints.” (Supra, 511 US, at —, 114 S Ct, at 1945; emphasis supplied.)
The court combined the Halper double jeopardy reasoning with an Austin Eighth Amendment analysis and applied it to a tax penalty case. Thus, Eighth Amendment punishment analysis was used in a double jeopardy issue.
The majority declined to use Halper’s comparison of amount of sanction versus government damage and cost. The majority felt that taxes must be analyzed differently. The Court noted that the tax was "eight times the drug’s market value” (supra, 511 US, at —, 114 S Ct, at 1946); the tax was conditioned on the commission of a crime, and the tax was on the " 'possession and storage of dangerous drugs’ ” (supra, 511 US, at —, 114 S Ct, at 1948). These factors led to the conclusion that the tax was punishment within the Double Jeopardy Clause of the Federal Constitution. The reasoning was virtually identical to that of Austin (supra). The Court also equated civil penalties, civil forfeitures and taxes to each other for the purpose of "constitutional constraints.”
After Halper/Austin (supra), a majority of courts have held that separate forfeiture proceedings of contraband per se,[1] the res of a crime,[2] or the proceeds of a crime are constitutional under the Eighth Amendment and the Double Jeopardy Clause (United States v Alexander, 32 F3d 1231, 1236, after remand from Sup Ct, supra; Securities & Exch. Commn. v Bilzerain, 29 F3d 689, 696; United States v United States Currency in Amount of One Hundred Forty-Five Thousand, One Hundred Thirty Nine Dollars, 18 F3d 73, 76; United *212 States v Tilley, 18 F3d 295, 297-300, cert denied — US —, 115 S Ct 573; United States v Borromeo, 1 F3d 219, 221; United States v Haywood, 864 F Supp 502; United States v $50,000 In United States Currency, 1994 WL 75145; United States v All Assets & Equip, of W. Side Bldg. Corp., 843 F Supp 377, 383-384; United States v $45,140, 839 F Supp 556; United States v $288,930 in United States Currency, 838 F Supp 367; State v Clark, 124 Wash 2d 90, 875 P2d 613, 616-618; People ex rel. Waller v Seeburg Slot Machs., 267 Ill App 3d 119, 641 NE2d 997; Johnson v Multiple Miscellaneous Items Numbered 1-424, 523 NW2d 238; State v Meister, 866 SW2d 485, 491; Idaho Dept. Of Law Enforcement v Real Prop. Located in Minidoka County, Idaho, 126 Idaho 422, 885 P2d 381, n 5).
A minority of courts have found double jeopardy/excessive fine violations for proceeds of crimes or contraband per se (United States v $405,089.23 United States Currency, 33 F3d 1210; United States v McCaslin, 863 F Supp 1299; QuinonesRuiz v United States, 864 F Supp 983; Fant v State, — Tex —, 881 SW2d 830; State v DePue, 96 Ohio App 3d 513, 645 NE2d 745).
The minority courts appear to believe that the majority court "did not consider the implications of Austin” (QuinonesRuiz v United States, 864 F Supp 983, 988, supra; see also, United States v $405,089.23 United States Currency, supra, 33 F3d, at 1220-1222). The minority courts point out that in Austin (supra) the Supreme Court limited its examination to the statutory scheme of the forfeiture and found it to be constitutional punishment. From this it is argued that an examination of the facts relating to the forfeited object and its relation to crime is improper as only an examination of the statute is authorized. Since the Supreme Court has found civil forfeitures punishment, the argument continues, all forfeitures, including the res of the crime, contraband per se, and proceeds of the crime are constitutional punishment within the Double Jeopardy or Excessive Fine Clauses (see, cases previously cited as minority view).
This court respectfully disagrees with the minority courts. The reason Austin (supra) examined only the statute is because the lower courts made no factual record. The lower courts believed the Eighth Amendment was inapplicable to civil forfeitures and therefore no factual record was made for the Supreme Court.
*213 Indeed, the remand in Austin (supra) to the lower court indicates that the lower court was to make the factual review that the minority courts appear to believe to be improper. In footnote 15, the Austin Court stated: "Justice scalia suggests that the sole measure of an in rem forfeiture’s excessiveness is the relationship between the forfeited property and the offense. See post, at 2814-15. We do not rule out the possibility that the connection between the property and the offense may be relevant, but our decision today in no way limits the Court of Appeals from considering other factors in determining whether the forfeiture of Austin’s property was excessive.” (Supra, — US, at —, 113 S Ct, at 2810.) The Court specifically stated that a factual determination of the relationship between the forfeited property and the crime is "relevant.”
Also in Austin, the Court said "Concededly, we have recognized that the forfeiture of contraband itself may be characterized as remedial because it removes dangerous or illegal items from society. ” (Supra, 509 US, at —, 113 S Ct, at 2811; emphasis supplied.) The Supreme Court conceded that the forfeiture of the contraband itself (contraband per se) is not punishment. The Court, however, held that Austin involved derivative contraband such as in the case of One 1958 Plymouth Sedan v Pennsylvania (380 US 693 [automobile used during illegal activity]).
This court agrees with the reasoning of State v Meister (supra, 866 SW2d, at 491),[3] wherein the court said: "When the subject matter of a forfeiture proceeding is more than the proceeds of the illegal activity, assuming argugendo that the Excessive Fines Clause applies to the states, an examination of whether the forfeiture is punitive and then whether the forfeiture is excessive is required by the Eighth Amendment. However, when the property to be forfeited is found to be the proceeds of illegal activity, either by unrebutted statutory presumption or by a trier of fact, the forfeiture is not punitive because one who commits a crime has no greater interest in the fruits of the crime than the state, and the Eighth Amendment is not applicable.” Thus, a convicted felon has no proprietary interest in proceeds of the criminal activity (United States v Tilley, supra, 18 F3d, at 300; United States v Alexander, supra, 32 F3d, at 1236). Taking away property in which a person has *214 no possessory interest or no lawful ownership right is not punishment, but remedial. Such forfeiture merely removes property from an unlawful possessor/owner.
This court also agrees with the rationale of United States v United States Currency In Amount of One Hundred Forty-Five Thousand, One Hundred Thirty Nine Dollars (18 F3d 73, supra). The court reasoned that there is no constitutional punishment in forfeiture of proceeds of criminal activity because there is no disparity between the property and the crime (supra, at 76). Forfeiture of proceeds is directly proportional to the crime. Thus, unlike the Supreme Court cases of Halper or Austin (supra), there exists no "excess” or "disproportionate” fine or penalty (see, Property Clerk, N. Y. City Police Dept. v Smalls, 153 Misc 2d 673, 679-680).[4]
The court finds that the Double Jeopardy Clause is inapplicable to the res of a crime, contraband per se, or the proceeds of a crime (see, 8 BNA Crim Prac Manual No. 25, Dec. 7, 1994, at 593-594).
In this matter, the District Attorney seeks a judgment equal to the value of all bets placed with the criminal enterprise during the period in the indictment.
Penal Law § 225.00 (2) defines gambling as follows: " 'Gambling/ A person engages in gambling when he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome.” The res of the crime of gambling is the "something of value” that is staked or risked (see, Property Clerk of N. Y. City v Di Paolo, 78 AD2d 834). Double jeopardy does not prohibit the forfeiture of res of the crime or the "something of value” in a gambling matter.
In this case, the District Attorney seeks the equivalent value of the "something of value.” This is authorized by CPLR article 13-A (Morgenthau v Citisource, Inc., 68 NY2d 211, 218).
For constitutional double jeopardy purposes, the court sees no difference between the res of the crime or the equivalent value of such res.
*215 The court finds no double jeopardy violation in this case.
To the degree that defendant’s answer contains a double jeopardy defense, that defense is stricken.

. Contraband per se is usually contrasted with derivative contraband. Contraband per se items are objects that are inherently illegal to possess, such as drugs, unlicensed weapons, or stolen property. Derivative contraband is an item used during the commission of a crime, such as a vehicle or real property. The items facilitate the crime but are not part of the crime.

. Res of a crime is an item that is not illegal to possess, but is the subject of a crime. Examples are: cash of a bank robbery, stock in a stock fraud case, one lot of emeralds which were not properly declared at customs. The object is not illegal to possess but is the subject of the crime.

. The court is aware that the Georgia Supreme Court has rejected Meister (Thorp v State, 264 Ga 712, 450 SE2d 416). That case is a derivative contraband issue and not contraband per se.

. The analysis would be similar under the instrumentality test announced in United States v Chandler (36 F3d 358).