[No. A067920. First Dist., Div. One. Mar. 25, 1996.]

THE PEOPLE, Plaintiff and Appellant, v.
WILLIAM LAWRENCE PRINCE, Defendant and Respondent.

Counsel

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Martin S. Kaye and Gerald A. Engler, Deputy Attorneys General, for Plaintiff and Appellant.

Colleen M. Rohan, under appointment by the Court of Appeal, for Defendant and Respondent.

Opinion

**STEIN, J.**—The People appeal an order dismissing the information charging William Lawrence Prince with several offenses, including the manufacture, and possession for sale of methamphetamine. (Health & Saf. Code, §§ 11379.6, 11378.) The court found that criminal prosecution was barred, under the double jeopardy clause, because in separate civil forfeiture proceedings the court had granted the government's motion for entry of default after Prince failed to answer. Prince filed a motion to set aside the defaults, and all further proceedings in the civil forfeiture cases were stayed until the conclusion of the criminal case.

Facts

On April 19, 1993, the district attorney filed four forfeiture complaints in Mendocino County Superior Court pursuant to former Health and Safety Code section 11488.4, subdivision (a),[1] each of which named Prince as the real party in interest. The first complaint, No. CV 66860, sought forfeiture of $2,250 and various weapons and equipment; the second, No. CV66861, of itemized stereo components; the third, No. CV66862, of assorted computer equipment; and the fourth, No. CV66863, of video equipment. Each of the complaints alleged that the property was seized during a March 8, 1993, search of Prince's residence, and that the items to be forfeited were "proceeds or purchased with proceeds from violations of sections 182 of the California Penal Code [and] 11379.6, 11378, & 11379 of the Health and Safety Code." The first forfeiture complaint also alleged, in the alternative, that certain security equipment and a generator were forfeitable pursuant to section 11470, subdivision (b) because they were used to facilitate the manufacture of methamphetamine (§ 11379.6), and that the firearms were also forfeitable pursuant to section 11470, subdivision (d)(2) because they

---

[1]All subsequent statutory references are to the Health and Safety Code except as otherwise indicated.

were possessed during multiple violations, including sections 11377, 11378, and 11379.6.[2] Each complaint alleged that all of Prince's personal property had been sold by a landlord in January 1991 to satisfy back rent obligations. Cash receipts found at Prince's residence showed that at approximately that same time Prince began purchasing chemicals and labware from a known supplier to methamphetamine manufacturers. Prince had no apparent source of legitimate income, yet cash receipts were found in his residence reflecting expenditures of approximately $250,000 over the preceding three years.

On July 1, 1993, the court granted motions for entry of default on each of the forfeiture complaints. Prince subsequently moved to set aside the default judgments, alleging that he had filed a claim listing his home address, but did not receive notice of the forfeiture because he since had moved to county jail.[3] On August 24, 1993, the court, pursuant to a stipulation, continued Prince's motion to vacate default in the forfeiture actions until the conclusion of his criminal case which had been filed the previous day.

The information charged Prince with manufacturing methamphetamine while armed with a firearm (§ 11379.6, subd. (a); Pen. Code, § 12022, subd. (c)), possession of ephedrine with intent to manufacture methamphetamine (§ 11383, subd. (c)), possession of methamphetamine for sale while armed with a firearm (§ 11378; Pen. Code, § 12022, subd. (c)), and possession of codeine. (§ 11350, subd. (a).) Prince pleaded not guilty.

On November 16, 1994, after allowing Prince to amend his plea to add a plea of once in jeopardy, the court presiding over the criminal case granted his motion to dismiss the information on the ground that the civil forfeiture proceedings imposed punishment for his criminal conduct, and therefore further criminal prosecution was barred by the double jeopardy clause. The People filed a notice of appeal that same day.

## ANALYSIS

The double jeopardy clause is one of the "least understood and, in recent years, one of the most frequently litigated provisions of the Bill of Rights."

---

[2]The parties agree that the forfeiture claim arose in 1993, and the version of the assets forfeiture law then in effect, sometimes referred to as the "*Katz* law" (*People* v. *$31,500 United States Currency* (1995) 32 Cal.App.4th 1442, 1452 [38 Cal.Rptr.2d 836]) controls. (See Stats. 1988, ch. 1492, p. 5285; *Mundy* v. *Superior Court* (1995) 31 Cal.App.4th 1396 [37 Cal.Rptr.2d 568], but see *People* v. *9660 Cherokee Lane, Newcastle* (Cal.App.).) Unlike the *Katz* law, the current version requires that a forfeiture action must be tried in conjunction with the criminal case, and before the same factfinder who hears the criminal case. (See § 11488.4, subd. (i)(1)-(5).)

[3]We granted the Attorney General's request to take judicial notice of the motions to set aside the default.

(*Whalen* v. *United States* (1980) 445 U.S. 684, 699 [63 L.Ed.2d 715, 728-729, 100 S.Ct. 1432] (dis opn. by Rehnquist, J.).) ██ The United States Supreme Court has stated that ". . . the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction [hereinafter "successive prosecution"] and multiple punishments for the same offense [hereinafter "multiple punishments"]." (*United States* v. *Halper* (1989) 490 U.S. 435, 440 [104 L.Ed.2d 487, 496, 109 S.Ct. 1892].)[4]

"A decade ago, the law was clear that civil forfeitures did not constitute 'punishment' for double jeopardy purposes. In *United States* v. *One Assortment of 89 Firearms*, 465 U.S. 354 [79 L.Ed.2d 361, 104 S.Ct. 1099] (1984), the Supreme Court held that the claimant's prior acquittal on criminal charges did not bar a subsequent action for forfeiture under 18 U.S.C. § 924(d). Applying the test set forth in *United States* v. *Ward*, 448 U.S. 242, 248 [65 L.Ed.2d 742, 749, 100 S.Ct. 2636] (1980), the Court concluded that Congress intended forfeiture to be 'a remedial civil sanction.' *89 Firearms*, 465 U.S. at p. 363 [79 L.Ed.2d at pp. 368-369]. Accordingly, it held that the Double Jeopardy Clause did not apply." (*U.S.* v. *$405,089.23 U.S. Currency* (9th Cir. 1994) 33 F.3d 1210, 1218, opn. mod. on den. rehg. (9th Cir. 1995) 56 F.3d 41, cert. granted *sub nom. U.S.* v. *Ursery* (1996) __ U.S. __ [133 L.Ed.2d 707, 116 S.Ct. 762].)

The decisions of the Supreme Court in *United States* v. *Halper, supra*, 490 U.S. 435, and *Austin* v. *United States* (1993) 509 U.S. 602 [125 L.Ed.2d 488, 113 S.Ct. 2801] have, however, raised questions concerning the application of the double jeopardy clause when the government first obtains a criminal conviction and later seeks forfeiture of proceeds of illegal transactions that also gave rise to the criminal convictions, or conversely, attempts to criminally prosecute a defendant, after obtaining a judgment of civil forfeiture. The issue is now pending before the United States Supreme Court in *U.S.* v. *$405,089.23 U.S. Currency, supra*, 33 F.3d 1210 (holding that civil forfeiture proceeding violated double jeopardy clause because defendants had already been convicted of same offenses), and *U.S.* v. *Ursery* (6th Cir. 1995) 59 F.3d 568, certiorari granted January 12, 1996, __ U.S. __ [133 L.Ed.2d 707, 116

---

[4]Yet, division exists within the court even as to this basic description of the scope of the protection provided by the double jeopardy clause. (See *Department of Revenue of Montana* v. *Kurth Ranch* (1994) 511 U.S. 767 [128 L.Ed.2d 767, 790-796, 114 S.Ct. 1937, 1954-1958] [Justice Scalia dissenting, challenges the notion that the double jeopardy clause prohibits multiple punishment, and suggests instead that "multiple punishment" issues implicate, instead, principles of due process and proportionality under the Eighth Amendment.].) Until a majority of the United States Supreme Court decides otherwise, we must assume that the double jeopardy clause protects against both successive prosecution for the same offense and multiple punishment.

S.Ct. 762] (vacating criminal conviction and sentence following entry of consent judgment in civil forfeiture of property used to facilitate offenses).

The trial court, in this case, applied the reasoning of *U.S. v. $405,089.23 U.S. Currency, supra,* 33 F.3d 1210, in precisely the manner forewarned of by Judge Rhymer, in her dissent from the Ninth Circuit's decision to deny a rehearing en banc. Judge Rhymer observed that, "[t]he flip side of the panel's reasoning is that a drug dealer whose illegally obtained proceeds have previously been seized may not thereafter be prosecuted because he will already have been 'punished.' This cannot be right." (*U.S. v. $405,089.23 U.S. Currency* (9th Cir. 1955) 56 F.3d 41, 42 [denial of rehearing en banc].) Yet, that is precisely what has occurred in this case.

■ We, of course, are bound only by the precedent of the United States Supreme Court on issues of federal constitutional law, and construe the decisions in *Halper* and *Austin* more narrowly than did the court in *U.S. v. $405,089.23 U.S. Currency, supra,* 33 F.3d at page 1210,[5] and those cases following the Ninth Circuit's reasoning. For reasons we shall explain, assuming arguendo that *Halper* applies at all,[6] it was error to dismiss the information based on Prince's double jeopardy plea because Prince has not yet been subjected to *any* punishment in the civil forfeiture proceeding in light of the stay, and the pending motions to set aside the defaults.

A. *Halper and Austin*

In *United States v. Halper, supra,* 490 U.S. 435, the court considered the question whether a nominally civil penalty might nevertheless constitute a

---

[5]In denying a petition for rehearing en banc in *U.S. v. $405,089.23 U.S. Currency, supra,* 56 F.3d 41, the court also relied upon *Department of Revenue of Montana v. Kurth Ranch, supra,* 511 U.S. 767. The analysis in *Kurth Ranch,* however, is sui generis, because it involved a tax imposed only when a defendant was arrested for a specific offense. The court did not reject its holding in *Halper,* but found the double jeopardy analysis in *Halper* to be inapplicable to a revenue raising measure. (*U.S. v. Salinas* (6th Cir. 1995) 65 F.3d 551, 553, fn. 2.)

[6]For a persuasive analysis of why the *Halper* double jeopardy protection should not apply at all when the defendant asserts that a *civil proceeding* bars any attempt at criminal prosecution, see *U.S. v. Collette* (D.Alaska 1995) 892 F.Supp. 232 (holding only a prior criminal prosecution can bar another criminal prosecution, and that a civil forfeiture proceeding is not a criminal prosecution even if the penalty imposed may, as applied, constitute "punishment"); *U.S. v. Falkowski* (D.Alaska 1995) 900 F.Supp. 1207 (same); but see *U.S. v. Hudson* (10th Cir. 1994) 14 F.3d 536, 540; *U.S. v. Chick* (9th Cir. 1995) 61 F.3d 682 (holding order of penalties is immaterial to the double jeopardy question). The United States Supreme Court in *Department of Revenue of Montana v. Kurth Ranch, supra,* 511 U.S. 767, reserved "the question whether an ostensibly civil proceeding that is designed to inflict punishment may bar a subsequent proceeding that is admittedly criminal in character." The court observed that the tax statute at issue in that case did not raise the question because the tax was imposed only after arrest for certain criminal offenses. (511 U.S. at p. __, fn. 21 [128 L.Ed.2d at p. 780, 114 S.Ct. at p. 1947].)

second "punishment" under the double jeopardy clause. Its analysis was predicated on the fact that the defendant had already been punished once because he had been convicted of 65 counts under a criminal false claims statute. The district court refused to impose the full $2,000 per violation penalty under the civil False Claims Act, 31 United States Code sections 3729-3731, finding that the "statutorily authorized penalty of $130,000" was 220 times greater than the approximately $585 Halper had fraudulently obtained from the government. The government appealed.

The United States Supreme Court held that the fact the penalty is imposed in a civil proceeding, does not preclude a finding that the civil sanction, *as applied in a particular case*, constitutes "punishment" for purposes of application of the double jeopardy clause prohibition against multiple punishments in a separate proceeding. "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment as we have come to understand the term." (*United States* v. *Halper, supra,* 490 U.S. at p. 448 [104 L.Ed.2d at p. 502].)

In light of Halper's showing that the penalty was "grossly disproportionate" to the government's loss, the court announced a rule "of reason: *Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss,* but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment." (490 U.S. at p. 449 [104 L.Ed.2d at p. 502], italics added.) The court left it to the discretion of the trial court to determine the "size of the civil sanction the Government may receive without crossing the line between remedy and punishment." (*Id.* at pp. 449-450 [104 L.Ed.2d at pp. 502-503.) The court further emphasized that the rule it announced was for the "rare case," such as the one before it where the fixed penalty per violation subjected a small but prolific offender to a penalty with no rational relationship to the government's loss.

In *Austin* v. *United States, supra,* 509 U.S. 602, 604 [125 L.Ed.2d 488, 494, 113 S.Ct. 2801, 2803] the court considered the question "whether the Excessive Fines Clause of the Eighth Amendment applies to forfeitures of property under 21 U.S.C. §§ 881(a)(4) and (a)(7)."[7] The government had filed an in rem action seeking forfeiture of Austin's mobilehome and auto body shop, based in part on evidence that Austin had conducted a drug

---

[7]These statutes provide for forfeiture of conveyances, or real property, used, or intended to be used, in commission of various drug-related offenses. (21 U.S.C. § 881(a)(4), (a)(7).)

transaction in his body shop, and had apparently retrieved the cocaine from his mobilehome.

The court held that the purpose of the Eighth Amendment was "to limit the government's power to punish," and that because punishment could be imposed in either civil or criminal proceedings, the excessive fines clause did not apply only to criminal penalties. (*Austin* v. *United States, supra,* 509 U.S. 602, 609 [125 L.Ed.2d 488, 497, 113 S.Ct. 2801, 2805].) In this context, the question was whether forfeiture was historically understood as a fine or punishment to which the Eighth Amendment applied, and whether the particular forfeiture statutes involved served any punitive purpose. The court held that even if forfeitures under 21 United States Code sections 881(a)(4) and (a)(7) were at least partly remedial as the government contended, they also served the purposes of retribution and deterrence, because the property forfeited was not contraband, and its value could vary dramatically, making any relationship between the governments costs and the amount of the sanction "purely coincidental." (509 U.S. at p. 621 [125 L.Ed.2d at p. 505, 113 S.Ct. at pp. 2811-2812].) The court concluded that the excessive fines clause does apply to such forfeitures, and remanded for the trial court to determine whether the forfeiture was excessive.[8]

B. *U.S.* v. *$405,089.23 U.S. Currency*

In *U.S.* v. *$405,089.23 U.S. Currency, supra,* 33 F.3d 1210, the court read *Austin,* as holding that any civil forfeiture that serves both remedial and punitive purposes is punishment, under *both* the excessive fines and double jeopardy clauses. It found the civil forfeiture of proceeds of illegal transactions pursuant to 18 United States Code section 981(a)(1)(A) and 21 United

---

[8]Several commentators have suggested that the court in *Halper* could have reached the same result by applying an Eighth Amendment excessive fines clause analysis to civil penalties as it did in *Austin,* instead of resorting to multiple punishment analysis under the double jeopardy clause. These commentators suggest that, had the court instead applied the excessive fines clause, none of the confusion concerning the implications of *Halper* for governmental efforts to both criminally prosecute defendants, and file civil enforcement actions would have arisen. (See, e.g., Henning, *Precedents in a Vacuum: The Supreme Court Continues to Tinker with Double Jeopardy* (1993) 31 Am. Crim. L.Rev. 1, 6-7, 43-50; Note, *United States* v. *Halper, Punitive Civil Fines, and the Double Jeopardy and Excessive Fines Clauses* (1991) 66 N.Y.U. L.Rev. 112.) In his dissent to *Kurth Ranch,* Justice Scalia, joined by Justice Thomas, stated that it is "time to put the *Halper* genie back in the bottle." He advocated the use of the Eighth Amendment to limit abuse of civil forfeitures and other civil penalties, in lieu of the confusing *Halper*-created multiple punishment analysis. He warned that "[t]he social cost of vindicating the fictional, *Halper*-created multiple-punishments prohibition will be much higher when criminal penalties are at stake, and we will be no more willing to pay it (nor should we) than the lower courts have been." (*Department of Revenue of Montana* v. *Kurth Ranch, supra,* 511 U.S. 767, __ [128 L.Ed.2d 767, 794, 114 S.Ct. 1937, 1958-1960].)

States Code section 881(a)(6) to constitute "punishment" on its face because: (1) *Austin* held that forfeiture statutes have been historically recognized as a form of punishment, (2) these forfeiture statutes focus on culpability of the owner, by providing an innocent owner defense, and (3) the forfeiture is tied to the commission of specified offenses. (33 F.3d at pp. 1220-1221.) The Ninth Circuit panel concluded that the civil forfeiture proceeding was barred under the double jeopardy clause, without even requiring, as *Halper* demands, that the claimants demonstrate that the particular forfeiture sought was "grossly disproportionate" to its remedial goal. Nor did it allow the government to present any evidence of its losses, or any other relevant evidence on the issue. (*Id.* at p. 1222.)

The primary analytical flaw in *U.S.* v. *$405,089.23 U.S. Currency, supra,* 33 F.3d 1210, is that the court " 'combined the two decisions [*Austin* and *Halper*] to excise Halper's inquiry into proportionality prior to lowering the double jeopardy boom.' " *(Ragin* v. *U.S.* (W.D.N.C. 1995) 893 F.Supp. 570, 576, quoting *Ringor* v. *United States* (D.Hawaii 1995) 887 F.Supp. 1371.) *Austin* merely established the threshold test for whether the Eighth Amendment proscription against excessive fines could apply at all to a civil forfeiture, reserving for the trial court the question whether the fine was excessive. In *Halper,* the court applied the multiple punishment protection of the double jeopardy clause, to hold that, if a defendant has already been criminally convicted, and the government seeks in a separate proceeding to impose a civil penalty based upon the same offenses, the defendant may establish that the nominally civil penalty, is "grossly disproportionate" to the remedial purpose of the civil statute. Only if he or she meets that burden, must the court conduct an inquiry into the government's costs and loss and determine whether, and at what level, the penalty sought to be imposed no longer has a rational relationship with the rough remedial justice the government is entitled to seek. (*U.S.* v. *Morgan* (2d Cir. 1995) 51 F.3d 1105, 1115, cert. den. __ U.S. __ [133 L.Ed.2d 112, 116 S.Ct. 171] [it is the defendant's burden to establish "gross disproportion" before any accounting under *Halper* required].) The *Halper* prohibition against multiple punishment is triggered *only when the defendant has already been punished.* It does not deem the civil proceeding to be the functional equivalent of a criminal prosecution. Rather, it precludes imposition of that portion of the civil penalty that the government is unable to justify as roughly proportionate to the remedial goals of the civil sanction, because it is deemed a second punishment.

By conflating the *Austin* Eighth Amendment and the *Halper* double jeopardy analysis, the court in *U.S.* v. *$405,089.23 U.S. Currency, supra,* 33 F.3d 1210, incorrectly concluded that a civil forfeiture of drug proceeds

constitutes "punishment" for double jeopardy purposes, based on its analysis of the purposes of the statute, without regard to its application. No double jeopardy claim arises under *Halper* unless the claimant also demonstrates that, as applied in the particular case, the penalty is "grossly disproportionate" to the statute's remedial purpose. Only then has the defendant made the threshold showing that is a prerequisite to determining that a nominally civil penalty, as applied, must instead be deemed a second punishment for double jeopardy purposes.

The court in *U.S.* v. *$405,089.23 U.S. Currency, supra,* 33 F.3d 1210, also confused the multiple punishment analysis of *Halper* with double jeopardy protection against successive criminal prosecutions, by holding that the civil forfeiture proceeding was barred altogether. Under *Halper,* if the court, after conducting an inquiry, determines that the forfeiture is "grossly disproportionate," the remedy is not to bar the proceeding altogether, but to adjust to the scope of the forfeiture so that it is proportionate to the statute's remedial purpose. (*United States* v. *Halper, supra,* 490 U.S. 435, 449-450 [104 L.Ed.2d 487, 502-503].)

## C. *Dismissal of the Criminal Information in This Case.*

██ Having clarified the limitations of *Halper*'s extension of double jeopardy protection to imposition of civil penalties, we now consider whether the trial court correctly applied *Halper* when it granted Prince's motion to dismiss the criminal information. Assuming arguendo, that *Halper* has any application at all when a defendant has not already been criminally convicted, but instead asserts a judgment of civil forfeiture bars the criminal prosecutions,[9] there are several reasons why it was error to dismiss the criminal information based upon Prince's double jeopardy plea.

First, the dismissal of the information while the civil forfeiture proceedings were still pending was premature because the double jeopardy protection recognized in *Halper* does not apply unless the defendant has already been subjected to punishment once. Although default judgments were entered, Prince filed motions to have them set aside, and the forfeiture proceedings, by stipulation, were continued until the conclusion of the criminal case.[10] The majority of courts that have directly addressed the question have held that a defendant is not "punished" for purposes of application of *Halper*

---

[9]See footnote 6, *ante.*

[10]Some federal courts have held that such parallel civil or criminal cases can qualify as a single proceeding under the double jeopardy clause because they are a part of a single coordinated prosecution. (See, e.g., *U.S.* v. *Millan* (2d Cir. 1993) 2 F.3d 17, cert. den. *sub nom. Bottone* v. *United States* (1994) 510 U.S. 1092 [127 L.Ed.2d 215, 114 S.Ct. 922].) We question whether cases that are filed separately, instituted at different times and presided over

until a final judgment of forfeiture is entered. (See, e.g., *U.S.* v. *Sanchez-Cobarruvias* (9th Cir. 1995) 65 F.3d 781, 783-784, cert. den. ___ U.S. ___ [133 L.Ed.2d 745, 116 S.Ct. 797]; *U.S.* v. *Park* (5th Cir. 1991) 947 F.2d 130, 134-135, vacated in part on other grounds, 951 F.2d 634; *McGowan* v. *United States* (W.D.N.C. 1995) 899 F.Supp. 1465, 1467; *Ragin* v. *U.S.*, *supra*, 893 F.Supp. 570, 574; *U.S.* v. *Wolf* (D.Or. 1995) 903 F.Supp. 36, 37; *U.S.* v. *Stanwood* (D.Or. 1994) 872 F.Supp. 791, 798;[11] *U.S.* v. *Messino* (N.D.Ill. 1995) 876 F.Supp. 980, 983; see also *U.S.* v. *Sanchez-Escareno* (5th Cir. 1991) 950 F.2d 193, 201-203, cert. den. 506 U.S. 841 [121 L.Ed.2d 78, 113 S.Ct. 123] [defendants who had signed promissory notes for civil fines but had not yet paid, had not yet been punished, and therefore criminal prosecution was not barred under double jeopardy clause].)

In this case, although the court granted the government's motions for entry of default, they may be vacated depending upon the disposition of the pending motion to set aside the defaults. (See *People* v. *One Parcel of Land* (1991) 235 Cal.App.3d 579, 582-584 [286 Cal.Rptr. 739].) Final resolution of the forfeiture proceedings has been stayed pending the outcome of the criminal prosecution. The stay of the forfeiture precludes the final imposition of any civil penalty upon Prince, and leaves open the possibility that he may yet successfully oppose the forfeiture. Consequently, there has been no "punishment" imposed in the civil proceedings, and therefore no double jeopardy claim under *Halper* has arisen with respect to the criminal prosecution. (*U.S.* v. *Park*, *supra*, 947 F.2d 130, 134-135 [Where forfeiture proceedings are held in abeyance pending outcome of criminal prosecution, defendant has not been "punished," and therefore *Halper* double jeopardy protection does not preclude criminal conviction.]; *U.S.* v. *Clementi* (8th Cir. 1995) 70 F.3d 997, 999 [same]; see also *U.S.* v. *McDermott* (10th Cir. 1995) 64 F.3d 1448, 1454-1455, cert. den. ___ U.S. ___ [133 L.Ed.2d 857, 116 S.Ct. 930] [civil forfeiture proceedings did not bar criminal conviction where civil forfeiture action is stayed pending outcome of criminal proceeding after defendant answered forfeiture complaint].)

---

by different factfinders are "single proceedings." (See, e.g., *Jeffers* v. *United States* (1977) 432 U.S. 137 [53 L.Ed.2d 168, 97 S.Ct. 2207] [parallel criminal actions involving two separate indictments were separate proceedings, but plurality found defendant waived double jeopardy clause objection by opposing joinder].) For purposes of this disposition, we assume, arguendo, that the civil forfeiture proceedings, and the criminal prosecution constitute separate proceedings.

[11]Many of these cases frame the issue as defining when jeopardy "attaches" in the civil proceeding. Although, we question whether this analysis, which typically arises in cases of successive criminal prosecution applies to a multiple punishment claim involving a penalty imposed in a civil proceeding, we nevertheless agree to the extent that they conclude that, in no event, does a claim of double jeopardy arise under *Halper* until a final judgment of forfeiture is entered, because a claim of multiple punishment does not arise unless the defendant has already been punished once.

Prince must have at least been subjected to a final judgment of civil forfeiture before he can claim that it constituted a "punishment" that precludes his criminal prosecution. Otherwise, Prince could obtain the dismissal of the criminal information, on the ground that he has already been "punished" in the forfeiture proceeding, then have the default judgments set aside, successfully challenge the forfeiture, and ultimately not be punished even *once*. Certainly such a scenario was never even imagined in *Halper*, and we can conceive of no principles of double jeopardy jurisprudence which require such a result.[12]

Second, even if the forfeiture proceedings were not stayed, we agree with those courts that have held a defendant who does not file a claim, or fails to file a timely claim, or does not file an answer, and suffers a default judgment in a civil forfeiture, may not assert the default judgment as a prior punishment and bar to a subsequent criminal prosecution. (See, e.g., *U.S.* v. *Torres* (7th Cir. 1994) 28 F.3d 1463, 1465, cert. den. __ U.S. __ [130 L.Ed.2d 603, 115 S.Ct. 669], citing *Serfass* v. *United States* (1975) 420 U.S. 377, 391-392 [43 L.Ed.2d 265, 275-276, 95 S.Ct. 1055]; *U.S.* v. *Ruth* (7th Cir. 1995) 65 F.3d 599, 604; *U.S.* v. *Arreola-Ramos* (5th Cir. 1995) 60 F.3d 188, 190; *U.S.* v. *Perez* (D.Colo. 1995) 902 F.Supp. 1318, 1322 [defendant who filed a late claim in forfeiture proceeding was never in jeopardy, and forfeiture judgment is no bar to criminal prosecution]; see also *U.S.* v. *Cretacci* (9th Cir. 1995) 62 F.3d 307 [holding that administrative forfeiture does not bar criminal prosecution]; *People* v. *Angeloni* (1995) 40 Cal.App.4th 1267 [47 Cal.Rptr.2d 584] [same]; *U.S.* v. *Baird* (3d Cir. 1995) 63 F.3d 1213, 1217

---

[12]In addition to a final judgment in the forfeiture proceeding, the defendant must demonstrate that the civil forfeiture is "grossly disproportinate" to the remedial purposes of the applicable statute. (*United States* v. *Halper, supra,* 490 U.S. 435, 440 [104 L.Ed.2d 487, 496-497]; *U.S.* v. *Morgan* (2d Cir. 1995) 51 F.3d 1105, cert. denied __ U.S. __ [133 L.Ed.2d 112, 116 S.Ct. 171].) The alleged aggregate value of all the property in all four complaints was approximately $43,000, whereas affidavits submitted in support of the motion for entry of default in the forfeiture proceedings aver that Prince's laboratory was capable of producing ten pounds of methamphetamine a day with a street value of approximately $100,000. The trial court, following the analysis in *U.S.* v. *$405,089.23 U.S. Currency, supra,* 33 F.3d 1210, also failed to conduct a particularized proportionality inquiry before dismissing the information. In the recent decision, *People* v. *$1,930 United States Currency* (1995) 38 Cal.App.4th 834 [45 Cal.Rptr.2d 322], the court applied the principles set forth in *Halper* to a California civil forfeiture of proceeds from illegal drug transactions. Although the court concluded that defendant should be given an opportunity to demonstrate "gross disproportionality" under *Halper,* even when the forfeiture is of proceeds of a drug offense, it questioned whether the defendant could meet that burden, citing with approval the decision of the Fifth Circuit in *U.S.* v. *Tilley* (5th Cir. 1994) 18 F.3d 295, certiorari denied __ U.S. __ [130 L.Ed.2d 490, 115 S.Ct. 574]. (See also *U.S.* v. *Salinas, supra,* 65 F.3d 551.) We do not reach the question whether the forfeiture of drug proceeds can ever be "grossly disproportionate." Nor do we address the question whether the forfeitures in this particular case meet that threshold standard, because it would be premature to do so in light of the procedural posture of this case.

[administrative forfeiture cannot constitute "punishment"].) Some courts have reached the same conclusion when a defendant files a claim, but later withdraws it and consents to entry of forfeiture. (*Ragin* v. *U.S.*, *supra*, 893 F.Supp. 570, 574-575; but see *U.S.* v. *Brophil* (D.Vt. 1995) 899 F.Supp. 1257, 1261 [civil forfeiture proceedings place defendant in jeopardy even if defendant does not contest the forfeiture proceedings]; *Gainer* v. *U.S.* (D.Kan. 1995) 904 F.Supp. 1234 [same].) Still others have held that, whether or not the defendant files a claim, a default judgment based on a failure to answer, does not bar a subsequent criminal proceeding because jeopardy could not attach in the civil forfeiture proceedings any sooner than the filing of the defendant's answer. (See, e.g., *U.S.* v. *Kearns* (9th Cir. 1995) 61 F.3d 1422, 1428; *U.S.* v. *Barton* (9th Cir. 1995) 46 F.3d 51, 52.)[13]

The courts that find that an uncontested civil forfeiture is not a bar to a criminal prosecution offer various different theories for why the failure to file a claim or answer in the forfeiture proceeding defeats the contention that a subsequent criminal prosecution is not barred by the default forfeiture judgment. By citing them we intend only to embrace their conclusion, not necessarily the analytical route followed in each case. In our view, the most persuasive reason why a forfeiture that is based upon a default or failure to file a timely claim, does not bar a subsequent criminal prosecution, is that the defendant has either failed to assert an ownership interest in the first instance, or by failing to answer, has effectively abandoned any claim to the property. Thus, he cannot claim to have been "punished" by its forfeiture. Moreover, "[t]o hold otherwise, would allow criminal defendants to choose their punishment. A criminal defendant could decide to forfeit material possessions in lieu of going to prison. This is certainly not the intent of Congress or recent Supreme Court decisions." (*U.S.* v. *Walsh* (D.Ariz. 1994) 873 F.Supp. 334, 337.)[14]

The only reference in the record on appeal to a claim having been filed by Prince, is his own assertion that he did file one, contained in his declaration in support of the motion to set aside the default judgments. Without a copy of the claim, we cannot determine whether it was timely filed. It is clear, however, on the record before us, that Prince did not file an answer, and default judgments were entered in the forfeiture proceedings. For the reason we have explained, even if they were final, default judgments in the civil forfeiture proceedings could not bar the criminal prosecution.

---

[13]It is unnecessary to decide at what point, if at all, jeopardy attaches in a civil forfeiture proceeding. We hold only that it could not attach before the defendant has even filed an answer.

[14]The *Walsh* court characterized the failure to file a claim or otherwise contest the forfeiture as a "waiver" of the double jeopardy claim. (*U.S.* v. *Walsh*, *supra*, 873 F.Supp. 334, 336.) We prefer to analyze the effect of the default instead as an abandonment of the property, and consequently as not constituting a "punishment."

We decline to reach the remaining issues raised by the People, including whether the forfeiture of drug proceeds is ever "grossly disproportionate" (see, e.g., *People* v. *$1,930 United States Currency, supra,* 38 Cal.App.4th 834; *S.E.C.* v. *Bilzerian* (D.C.Cir. 1995) 29 F.3d 689 [308 App.D.C. 43]; *U.S.* v. *Salinas, supra,* 65 F.3d 551; *District Atty. of Kings County* v. *Ladarola* (1995) 164 Misc.2d 204 [623 N.Y.S.2d 999] and cases cited therein); whether the civil forfeiture proceedings and criminal prosecution are "separate proceedings" (see, e.g., *U.S.* v. *Millan, supra,* 2 F.3d 17, and whether the forfeiture and criminal prosecution impose punishment for the "same offenses"; see *United States* v. *Dixon* (1993) 509 U.S. 688, 696-697 [125 L.Ed.2d 556, 568-569, 113 S.Ct. 2849, 2856]; *Department of Revenue of Montana* v. *Kurth Ranch, supra,* 511 U.S. 767, __ [128 L.Ed.2d 767, 777-778, 114 S.Ct. 1937, 1945]; *U.S.* v. *$292,888.04 in U.S. Currency* (9th Cir. 1995) 54 F.3d 564; *U.S.* v. *Chick, supra,* 61 F.3d 682.)[15] It is unnecessary to reach these questions, because we reverse the order dismissing the information on the grounds we have stated. The remaining double jeopardy issues may be entirely mooted, at least as it pertains to the criminal prosecution before the trial court, unless Prince prevails on his motion to set aside the default judgments, and final declarations of forfeiture are entered before jeopardy attaches in the criminal prosecution. (See, e.g., *United States* v. *Kearns, supra,* 61 F.3d 1422, 1428, *U.S.* v. *Barton, supra,* 46 F.3d 51, 52; *U.S.* v. *Sanchez-Cobarruvias, supra,* 65 F.3d 781, 783-784; *Ragin* v. *U.S., supra,* 893 F.Supp. 570, 574; *U.S.* v. *Stanwood, supra,* 872 F.Supp 791, 798.)[16]

## CONCLUSION

The order dismissing the information is reversed, and the matter is remanded for further proceedings consistent with the views expressed in this opinion.

Strankman, P. J., and Dossee, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 19, 1996.

---

[15]In *Libretti* v. *U.S.* (1995) __ U.S.__ [133 L.Ed.2d 271, 116 S.Ct. 356], the court observed that *criminal* forfeiture is an aspect of punishment, rather than a substantive offense. It is unclear how to define the "offense" in a civil forfeiture especially when the civil forfeiture does not require proof that the owner actually committed any substantive criminal offense.

[16]We express no opinion on the merits of any Eighth Amendment, or *Halper* challenge Prince may raise in the civil forfeiture proceeding if jeopardy attaches first in the criminal prosecution. These issues are not before us because this is an appeal of the dismissal of the criminal information.